UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
| --- |

UNITED STATES OF AMERICA
                    Plaintiff,

        v.                                             Docket No.: 12 CR 641-01 (NRB)

JACQUES WAJSFELNER
                          Defendant.              Sentence Date: March 5, 2013

## DEFENDANT'S SENTENCING MEMORANDUM

Jacques Wajsfelner ("Wajsfelner" or "the defendant") submits this Memorandum to assist the Court in reaching an appropriate sentence. Nothing in this Memorandum is intended to excuse the conduct of the defendant; it is inexcusable, which he realizes and acknowledges. Rather, it is being offered to place the offender, and his offense conduct, in 18 U.S.C. §3553 context.

For the reasons set forth below, the defendant requests that he be sentenced to a period of two years probation, which would include the special conditions that he make an FBAR payment in the amount of $2,844,433.00 as well as to file amended tax returns for the years 2006-2010, make tax payments in the aggregate amount of 344,224.00[1], and continue to cooperate with the United States and the Internal Revenue Service if, and as, requested.

---

[1] The FBAR payment has been made to the United States Treasury, as have the amended tax returns been filed and outstanding amounts paid to the United States Treasury as well. Please note that the final tax amount owed may be recomputed.

We respectfully suggest that this sentence is "sufficient, but not greater than necessary" to comport with the purposes set forth in 18 U.S.C. §3553(a)(2), reflecting, in the context of his offense conduct and personal characteristics, the seriousness of the offense, while promoting respect for the law and providing a just punishment.  This recommendation is also predicated upon the mitigation provided by the defendant's state of mind during the offense period, which is set out in the "Report of Forensic Psychiatric Evaluation" by Dr. Roger Gray, a copy of which (along with Dr. Gray's Curriculum Vitae) is attached hereto as Exhibit 1, and which will be discussed *infra*, as well as in the Pre-Sentence Investigation Report, itself.

**I. PROCEDURAL HISTORY**

On August 20, 2012, Jacques Wajsfelner plead guilty in to a one-count information for willful failure to File a Report of Foreign Bank and Financial Accounts (FBAR), and was released on pre-trial supervision pending sentencing on March 5, 2013.

**II.      BACKGROUND OF DEFENDANT AND OFFENSE CONDUCT**

The Defendant is an approximately 84 year old married (second marriage) man living in a Weston, Massachusetts home, which he owns.  The defendant's first wife died several years ago after an approximately 50-year marriage which resulted in one son, now 51.  The defendant suffers, and has suffered for many decades, from Post-Traumatic Stress Disorder (PTSD) as well as from several physical and neuro-psychological deficits.  He has no substance abuse issues nor prior history of mental health issues, other than the PTSD.  He owns considerable real estate which he has

historically developed and managed for his family.

### III.   __ARGUMENT__

The Defendant respectfully suggests that an appropriate application of 18 U.S.C. 3553 (a) factors to the circumstances of his case should result in a non-incarceration sentence of two-years probation with the special conditions earlier stated.  The §3553(a) factors generally include (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, to afford adequate deterrence, to protect the public, and to provide the defendant with needed educational or vocational training or medical care, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victim of the offense. 18 U.S.C. §3553(a).

With regard to the United States Sentencing Guidelines, the district court, while not bound by them, still must consult and consider them when imposing sentence. United States v *Booker*, 543 U.S. § 20 at 264.  Courts of Appeals cannot disturb a district court's sentence unless the appellate court finds that sentence unreasonable. *See id.* The United States Supreme Court clarified post-*Booker* sentencing procedure in *Gall v. United States*, 128 S. Ct. 586. The *Gall* Court indicated that when sentencing a defendant,

>The District Court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to

secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

128 S. Ct. at 596-597 (internal citations and quotations omitted).  The Supreme Court re-emphasized the point stating, "[T]he sentencing court does not enjoy the legal presumption that the Guidelines sentence should apply." *Nelson v. United States*, 129 S.Ct. 890 (2009), *quoting, Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007).

While the various Circuit Courts of Appeal have noted that sentencing courts must employ "an increased degree of justification commensurate with an increased degree of variance" from the advisory sentencing guideline range, it has also held that under a post-*Gall* rubric, "there is no stringent mathematical formula that cabins the exercise of the sentencing court's discretion. Indeed, after *Gall,* the sentencing inquiry-once the court has duly calculated the GSR-ideally is broad, open-ended, and significantly discretionary.  At that point, sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described." See eg. *United States v. Martin*, 520 F.3d 87, 91-92 (1st Cir. 2008) (internal citations and quotations omitted)(affirming a 91-month downward deviation from the advisory sentencing guideline range).

Here, the defendant asks the Court to exercise its significant discretion and

4

sentence him to probation with conditions.  In requesting this sentence, the defendant offers no excuses for his conduct.  He knows and appreciates the wrongfulness of his actions and fully accepts responsibility therefor.  Nonetheless, it should be noted that he is an elderly man suffering from a long standing post-traumatic stress disorder along with progressively deteriorating cognitive and physical function.   He has also cooperated with the government attendant to his guilty plea in sorting out his wrongdoing, has mde a substantial FBAR payment, and has filed amended tax returns along with payments for taxes owed.  Again, this is not offered as excuse but as context to understanding the offense and the offender.  Given his infirmities and vulnerabilities, an incarceration sentence would present very real risk to his material well-being.  And, every other aspect of the defendant's life stands in stark contrast to his crime of conviction.   An honorably discharged veteran of the United States Army, he was a model husband, father, and citizen throughout his life.  And, he will continue to be so.  While acknowledging that the Court should punish him for his crime, the defendant also asks the Court to temper its sentence to reflect these mitigating factors.

The defendant wishes the Court to consider that, under the circumstances, a sentence of probation with designated special conditions is, in fact, sufficient to meet the purposes prescribed by 18 U.S.C. §3553(a)(2).  A felony conviction, particularly to a proud and an honorable man such as the defendant, is a terrible burden that he will have to answer for, in various contexts, for the rest of his life.  Thus, there is general deterrence in the sentence as the message is sent that violating the tax reporting payments will be punished with substantial consequences, restrictions of liberty (and reputation) in

addition to the obligation to repay the losses caused by the criminal conduct.  Specific deterrence already has been met as the defendant came to realize the devastating impact his behavior has had, not only upon him but upon his wife, and son as well.  The public is not in need of protection from the defendant as he is not aggressive, violent or prone to harm anyone, and certainly not a risk to re-offend.

In fact, the First Circuit has summarized the central principles of the post-Booker and – *Gall* sentencing procedure described above, as follows.

> In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent of that there are sound, case-specific reasons for deviating from them.  Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale.  Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

> *United States v. Martin, 520 F. 3d 87, 91 (1ˢᵗ Cir. 2008) (quoting Gall, U.S. at 52).*

In the instant case, the statutory purpose of deterring crime would not be furthered by a sentence greater than probation.  In United States v. Haynes 557 F. Supp. 2d 200, 207 (D. Mass. 2008).  Former Massachusetts Federal Judge Nancy Gertner observed that deterrence is a complicated concept in our society.

It is clear that punishment plays an important role in deterring crime, but the nature of that relationship is not so clear-cut.  There is significant downside to what has been called the American experiment in mass incarceration.  Large numbers of people reenter communities that have little or no ability to absorb them, resulting in a constant shuffling and reshuffling of neighborhood residents.  And while prisoners are obviously not committing crime in their communities while they are incarcerated, they also are not functioning as parents, workers, consumers, or neighbors…There is growing evidence that the coerced removal of residents from poor and disadvantaged neighborhoods – even of those thought to be involved in criminal activity – may, in some case, undermine a community's ability to self-regulate and exercise informal social control over crime by further disrupting the creation of social and familial bonds. . . . To be sure, these concerns should not lead to wholesale leniency, no matter the facts.  Rather, they suggest that courts should tread extremely cautiously when deciding whether and how long to incarcerate nonviolent drug offenders.

While Judge Gertner is here speaking of minority (racial) communities, and primarily non-violent drug offenders, the logic of her message is far more inclusive, particularly to a situation, where as here, a defendant suffering from long-term PTSD arising out of enduring the worst Nazi-Germany had to offer a young Jewish boy alone with his mother and young brother after having lost his father to sudden death, and ultimately having to leave everything familiar behind to relocate to another country (USA) to essentially start over again.  And confronting  a progressively deteriorating neuropsychological and physical function as he aged.

## CONCLUSION

For the foregoing reasons, Jacques Wajsfelner respectfully asks the Court to impose the requested sentence.  In light of the facts and circumstances of the case, and considering the defendant's personal circumstances, the proposed sentence is the most fair and just resolution of all competing interests.

7

Dated: February 26, 2013

Respectfully submitted,
JACQUES WAJSFELNER
by his attorneys,

*/s/ Jeffrey A. Denner*

Jeffrey A. Denner BBO # 120520
(Pro Hac Vice)
DENNER PELLEGRINO, LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114
(617) 227-2800

*/s/Danielle Menard*

Danielle Menard NY # 3039914
DENNER PELLEGRINO, LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114
(617) 227-2800

**Certificate of Service**

I, Jeffrey A. Denner, hereby certify that on this _____ day of February, 2013, I have served all parties registered with ECF for this matter with a true copy of the foregoing *Defendant's Sentencing Memorandum* by virtue of transmitting the same to the Court via the ECF system.