UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,         :

      -v.-                              :         12 Cr. 641 (NRB)

JACQUES WAJSFELNER,
                                    :
        Defendant.
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

                                                      PREET BHARARA
                                                      United States Attorney
                                                      Southern District of New York

Of Counsel:
      Daniel W. Levy
      Assistant United States Attorney



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*


March 1, 2013

By ECF and Hand
The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2270
New York, New York  10007-1312

>      Re:    United States v. Wajsfelner
>             12 Cr. 641 (NRB)

Dear Judge Buchwald:

      The Government respectfully submits this letter in advance of the sentencing of defendant Jacques Wajsfelner (the "defendant"), currently scheduled for March 5, 2013, at 4:00 p.m.

      For the reasons set forth below and in brief remarks that the Government intends to make at sentencing, the Government submits that the appropriate sentence should include some loss of liberty, whether in the form of either a short period of incarceration, community confinement, or home confinement.  The Court may also wish to consider a fine on top of the civil penalty and restitution to which the defendant has already agreed.

### I.    Wajsfelner's Criminal Conduct

      From calendar years 1995 to 2011, the defendant maintained a series of secret bank accounts at two banks in Switzerland, first at Credit Suisse and later Wegelin & Co. ("Wegelin").[1]

---

[1] Wegelin has pleaded guilty in this District to conspiring with, among others, U.S. taxpayers to evade taxes.  It is expected to be sentenced by the Honorable Jed S. Rakoff on March 4, 2013.

The Honorable Naomi Reice Buchwald
March 1, 2013
Page 2

At first, the defendant's account was held in his own name at Credit Suisse and, later, in the name of a Hong Kong corporation formed by a financial advisor external to Credit Suisse. The sham corporation was used to insulate the defendant from his account.

When Credit Suisse exited the business of providing services to U.S. taxpayers, the defendant closed his account and transferred the assets to Wegelin, where he had opened a new account in his own name.

From 1995 through 2011, the defendant did not file the form required by the Internal Revenue Service (the "IRS") to disclose his foreign bank accounts.

Moreover, from 2005 through 2011, the years for which records are available to the Government, the defendant did not report the income earned in the Swiss bank accounts on his tax returns, nor did he disclose the existence of these accounts, which was information required to be included on his tax returns.

From 2005 through 2010, the defendant evaded $419,940 of federal income taxes on the amounts earned in his Swiss bank accounts.

## II.     The Appropriate Sentence

The Government submits that a sentence involving some loss of liberty -- be it in the form of a short term of imprisonment, community confinement, or home confinement -- is appropriate because of the extent of defendant's conduct, which lasted over fifteen years, the hundreds of thousands of dollars of harm caused by the defendant to the United States Treasury in just the last few years of his conduct, and the need for deterrence of tax evasion of just the type in which the defendant engaged.

### A.     The Nature and Circumstances of the Offense
### Support a Sentence Involving Some Loss of Liberty

The conduct at issue here resulted in substantial harm to the United States Treasury. Over just the course of the years 2005 through 2010, the years for which the Government was able to determine the tax loss, the defendant's conduct resulted in evasion of $419,940 of taxes. Of course, the defendant had been evading taxes by hiding money in Switzerland since at least as far back as 1995, meaning that the likely income taxes evaded are meaningfully higher, although surely not higher than $1 million. See PSR ¶¶ 15-16. Despite having a net worth that eventually grew to over $14 million, the defendant refused to disclose the existence of his account, as required by law, see PSR ¶¶ 7-8, and pay appropriate taxes on this income for over fifteen years.

The defendant's conduct is aggravated by what happened when he was questioned by investigators. Upon his arrival in Boston from an overseas trip, the defendant was met by Special Agents of the Internal Revenue Service, Criminal Investigation Division. He could have

The Honorable Naomi Reice Buchwald
March 1, 2013
Page 3

simply refused to answer their questions. Instead, the defendant lied and did so blatantly. Among other false statements that the defendant made when he was interviewed, he said that:

(1) he did not know who Beda Singenberger was and had never heard that name, when, in truth and in fact, Beda Singenberger was the Swiss financial advisor who had set up the Hong Kong corporation that was used to hide Wajsfelner's accounts from the IRS and Wajsfelner had met with him in person, see PSR ¶¶ 12, 14, 18, 23;[2]

(2) he had never done business with Sinco Treuhand AG, when, in truth and in fact, Sinco Treuhand AG was Singenberger's company and Wajsfelner had done business with it, see PSR ¶¶ 12, 18;

(3) he had never had an account at Credit Suisse, when, in truth and in fact, Wajsfelner had had an account at Credit Suisse for many years, see PSR ¶¶ 15-21;

(4) he had never heard of the company "Ample Lion Ltd." and had never formed a Hong Kong corporation for any purpose, when, in truth and in fact, Wajsfelner had an account in the name of this very Hong Kong corporation, see PSR ¶¶ 18-23; and

(5) he did not, at the time of the interview, have any foreign bank account, when, in truth and in fact, he did, see PSR ¶ 26.

See Memorandum of Interview, dated Sept. 15, 2011, ¶¶ 1, 2, 4, 8, 10 (attached hereto as Exh. A).

    **B.    General Deterrence Requires that the
           Defendant Experience Some Loss of Liberty**

A sentence involving some loss of liberty should be imposed because of the need to deter others who would engage in similar misconduct. Deterrence is important in tax cases generally, but also specifically in cases involving the extraordinarily hard-to-detect and underprosecuted conduct in which the defendant engaged: offshore tax evasion.

As the Sentencing Guidelines themselves make clear, "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators." U.S.S.G. ch. 2, part T (intro. cmt.).

---

[2] Singenberger has been charged in this District with conspiracy to file false tax returns and to evade taxes. He is presently a fugitive.

The Honorable Naomi Reice Buchwald
March 1, 2013
Page 4


      The Fourth Circuit recently made essentially the same point in a tax evasion case:

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

United States v. Engle, 592 F.3d 495, 502 (4th Cir. 2010).

      And Judge Weinfeld had articulated the point in a pre-Guidelines setting:

> This court has long had the view that income tax evasion cases where defendants are found guilty, whether upon their pleas of guilty or after jury verdict, require a term of imprisonment. The income tax laws of our country in effect reflect an honor system under which the citizens are required to cooperate with the government, to file true and accurate returns. I have been of the view that unless a citizen lives up to his responsibility there must follow, barring an extraordinary situation, a term of imprisonment as an example to other people in the community.

United States v. Tana, 85 Cr. 1119 (EJW), 6/17/86 Tr. at 12-13 (attached hereto as Exh. B).

      In a recent case involving a defendant who had a secret account in Switzerland containing millions of dollars and that resulted in hundreds of thousands of dollars of tax loss and a Sentencing Guidelines range of 24 to 30 months (facts that are relatively similar to the facts here), Judge Gardephe echoed Judge Weinfeld's sentiments in a manner applicable to this case:

> Our tax system is, at bottom, a voluntary one. Those who use sophisticated means of tax evasion, the sorts of sophisticated means seen here, when their activities come to light they must be punished in a manner that will discourage others from engaging in similar conduct. I believe in the views of Judge Weinfeld, for whom I have the greatest respect, and specifically his views as expressed in the case of United States versus Tana, that absent extraordinary circumstances, cases of significant tax evasion often call for a sentence of imprisonment. There's nothing about the facts here that suggest to me that a different outcome is appropriate.

United States v. Werdiger, 10 Cr. 325 (PGG), 11/9/11 Tr. at 49-50 (relevant pages attached hereto as Exh. C). Judge Gardephe sentenced this defendant -- who was 64 at the time of sentencing -- to a year and a day of imprisonment.

The Honorable Naomi Reice Buchwald
March 1, 2013
Page 5

      Other judges in this district have also imposed sentences involving a loss of liberty in substantially similar cases.  For example, Judge Berman imposed a sentence of 8 months' community confinement on a 61-year old doctor who evaded a similar amount of taxes.  See United States v. Reiss, 11 Cr. 668 (RMB), 1/11/12 Tr. at 3-5, 17 (attached hereto as Exh. D); see also United States v. Heller, 10 Cr. 388 (PKC), 1/20/12 Tr. at 4-7, 12-17 (attached hereto as Exh. E) (sentencing tax evader with serious physical ailments who hid money in Switzerland and had paid substantial financial penalty to 45-day term of imprisonment and imposing $180,000 fine).

      "Taxes," wrote Oliver Wendell Holmes, "are what we pay for civilized society . . . ." Compañía General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100 (1927) (Holmes, J., dissenting).  This country depends largely upon voluntary compliance with the internal revenue laws by all citizens, regardless of wealth or status.  And that system of voluntary compliance would crumble if those people owing taxes believed they could cheat with impunity or that the most severe sanctions that they would face when caught were merely the payment of back taxes, interest, and penalties, or a sentence the equivalent of a relative slap on the wrist.

      This case involves a man who, like most Americans, enjoyed benefits from the taxes honestly and accurately paid by others, but who decided that he would, in effect, thumb his nose at the tax system and the IRS by engaging in a scheme to hide money overseas and to evade taxes.  Some loss of liberty, even if for a brief period, is essential in a case like this, lest the fraud perpetrated by the defendant breed skepticism and bitterness among hard-working American taxpayers who fulfill their tax obligations by paying their taxes honestly, but who do not have the financial wherewithal or sophistication to hide money overseas.

      A sentence involving some loss of liberty sends the appropriate message that the difficult to detect type conduct engaged in by the defendant, and lying to federal agents about it, are serious criminal conduct and a fraud no different than other types of fraud.

      C.      **The Defendant's Arguments Do Not Support a Variance**

      The defendant seeks to mitigate his offense by offering the report of a forensic psychiatrist that purports to explain the defendant's conduct as caused in significant part by the defendant's symptoms of post-traumatic stress disorder ("PTSD").  Def. Mem., Exh. 1 at 5.

      The Court should reject the suggestion.  The defendant's experience before and during World War II are harrowing.  But many, indeed most, victims of the atrocities, include those who experienced far worse than the defendant, do not commit crimes. Since immigrating to the United States more than sixty-two years ago, the defendant has been able to operate his own business, be involved in politics, and maintain a mostly law-abiding, honorable, and successful life.  It is simply hard to accept that his supposed PTSD manifested itself in one way and one way alone: with the defendant's desire to hide money in Switzerland and evade taxes.

The Honorable Naomi Reice Buchwald
March 1, 2013
Page 6

The defendant was welcomed by the United States and given an opportunity to thrive and life a productive life here. The notion that he would turn around and defraud the very country that provided him with these things is, indeed, an aggravating factor.

### D. The Court May Also Wish to Consider Imposing a Fine

Pursuant to his plea agreement, the defendant agreed to pay a civil penalty of $2,844,433 for failure to disclose his foreign bank account, as required by applicable law and regulation. That figure represents 50% of the highest balance in his Wegelin account. See PSR ¶ 21. This penalty is authorized by 31 U.S.C. § 5321 (a)(5)(C)(i)(II). However, given the defendant's substantial net worth -- over $14.1 million before the payment of the agreed-upon civil penalty of $2.8 million and his $419,940 of restitution -- the Government submits that the Court may exercise its discretion to impose an additional criminal penalty in the form of a fine.

By virtue of the plea agreement, which indicates the defendant's agreement that the tax loss resulting from his offense is $419,940, the maximum possible fine that the Court may impose is $839,880. See 18 U.S.C. § 3571(d) ("If any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss").

### IV. Conclusion

The Government submits that, on the unique facts of this case, a sentence that involves some loss of liberty -- in the form of a short period of incarceration, community confinement, or home confinement -- and perhaps a fine, which the Probation Office recommends, see PSR p.25, is an appropriate sentence.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____/s/_____
Daniel W. Levy
Assistant United States Attorney
Telephone: (212) 637-2434

Attachments (Exhs. A-E)

cc:   Jeffrey A. Denner, Esq. (by ECF)
      Denner Pellegrino LLP

# CERTIFICATE OF SERVICE

I, Daniel W. Levy, declare under penalty of perjury that:

1. I am an Assistant United States Attorney for the Southern District of New York.

2. On March 1, 2013, I caused a true and correct copy of the foregoing redacted GOVERNMENT'S SENTENCING MEMORANDUM, together with the exhibits thereto, to be served by Clerk's Office Notice of Electronic Filing upon the following attorney, who is a filing user in connection with this case:

> Jeffrey A. Denner, Esq.
> Denner Pellegrino LLP
>
> Counsel for Defendant Jacques Wajsfelner

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 1, 2012
New York, New York

\_\_\_/s/_____
Daniel W. Levy
Assistant United States Attorney
Telephone: (212) 637-1062